Mr. Allen. May I please the Court? Galliford. Wynne Allen from Kirkland & Ellis on behalf of Honeywell. I've reserved five minutes for rebuttal. Plaintiffs' claims in this case are foreclosed by the Supreme Court's unanimous decisions in Tackett v. Reese and this Court's longstanding jurisprudence dating back to John Morell & Co. Those cases require courts to use ordinary principles of contract law to determine whether a CBA vested health care benefits. And here, those ordinary principles foreclosed plaintiffs' claims. The CBAs contained no explicit language vesting retiree health care benefits beyond the life of the contract. To the contrary, the CBAs all contained expressed durational clauses determining all provisions at the end of each contract, and no provision stated that retiree health care was subject to a different durational clause. In light of that plain language and the consistent line of precedent interpreting similar language, the district court should not have entered an injunction because plaintiffs have no likelihood of success on the merits of their claims. Plaintiffs' principal argument in response is that the CBA's pre-65 language constitutes a durational clause for health care benefits. It does not. The pre-65 language speaks only to eligibility for benefits, not duration. It tells you who is entitled to benefits, not how long benefits will be provided. The H-65 language is found in two places in the CBA. The first is at the heading of the retiree health care section. It's at JA-222 and 274. And there it says, quote, retiree health care, open paren, pre-65 only, close paren, close quote. Then at the very end of that same section, JA-223 and 274, it says, quote, the company does not provide health care benefits for local 1145 retirees after age 65, close quote. The function of that language is to limit health care benefits to only those retirees who are under age 65, which is when retirees become eligible for Medicare. The language makes two things clear. One, retirees don't get health care if they are over age 65 at the time the CBA starts, and two, health care stops if a retiree turns 65 during the term of the CBA. But that language does not say that retiree health care benefits are vested. It does not say that they are exempted from the CBA's durational clauses, and it does not say that health care benefits continue even if the governing CBA expires and health care is not renewed in the current CBA, as happened here. Other textual indicators reinforce the conclusion that the parties did not vest benefits, and these are all textual indicators that this Court, as well as others, have relied upon to find that benefits are not vested. We walk through those in our brief, but just to recap, there's the fact that the contracts continue health care benefits for individuals who had retired under prior CBAs. That's a fact this Court relied upon in John Morell and Anderson to hold that benefits were not vested. There's the fact that the CBAs and the SPDs use explicit vesting language for pension, but not for health care. That's a fact this Court relied on in John Morell to find no vesting. Can I ask you about one issue that bothers me? In the 2010 agreement, you have the special retirement program. And is there, I'm sure your answer is going to be no, but it seems at least it's arguable there's some ambiguity in that provision about what the retirees are getting when they elect to take early retirement. It's not uncommon under early retirement programs to be a quid pro quo. You retire early, and we give you some extra health insurance benefits. That's a very common type of thing to do. And if you couple that with the extrinsic evidence that the plaintiffs have claimed exists about representations that were made that if they took advantage of the early retirement program that they would have health insurance coverage to 65, doesn't that at least create a reasonable chance of success on the merits? No, Your Honor, absolutely not. The special retirement program, by its plain text, speaks only to eligibility. At JA 274 it says people who comply with the various requirements, quote, will be eligible for health care. And it's all still subject to the durational language in the CBAs. The District Court seemed troubled that that might be a meaningless promise for someone who retired late in the term of the CBA. The postscript in Morrell, which specifically upheld a specific program. Absolutely, Your Honor. Why don't we need extrinsic evidence as to whether you argue in a supplemental reply brief that, well, that had special background? Well, Your Honor, the language in Morrell expressly carved out the benefits from the general durational clause. You had a general durational clause that says. That would be the argument here. But it's a very different provision. The general durational clause in Morrell said the contract terminates, comma, except for the benefits and subchecks in B, close, close, quote. That's what John Morrell said. That isn't. I don't think Tackett requires that specific limitation to be drafted into a general duration clause if a particular provision is inconsistent with the duration clause. Two responses to that. I don't think the special retirement program is inconsistent with the general durational clause at all. The special retirement program promised benefits for the remainder of the term of the 2010 CBA plus the term of any future CBA in which the parties agreed to renew health care benefits as they did in 2013 here. So the folks who retired under the special retirement program could have gotten up to seven years of benefits. That's a very real, meaningful promise. It's a very real, meaningful benefit. Whereas the people who didn't retire under the special retirement program got no benefits. So the fact that the special retirement program afforded real benefits doesn't conflict with the general durational clause, nor does it create ambiguity because you have people that are still getting real benefits out of that. There was extrinsic evidence in Burrell. I mean, it's 20-some years since I wrote it, but most of the cases that I've been involved in, there's been extrinsic evidence. It's always been recognized by the Supreme Court and our court that ambiguity is quite common in this universe, and so you need the bargaining history. I very strongly disagree, Your Honor, because Tackett and Reese could not have been clearer that when you have an unambiguous contract applying ordinary principles of contract interpretation, you do not resort to the extrinsic evidence. We're talking about ambiguities. That's what our questions have raised in a preliminary injunction. I don't see this as tipping the scales under the data phase, but I see it as pertinent. Your Honor, I certainly agree that if the contract's ambiguous, you can consider extrinsic evidence, but what I'm saying is under the ordinary principles of contract law that Tackett and Reese say we apply, there is no ambiguity here. The rule of Reese is when a contract has a general durational clause, you apply that clause unless there's a more specific durational clause applying to retiree health care benefits. There is not anything in this contract that applies a more specific durational clause to retiree health care benefits. What if the plaintiffs are right, that Honeywell sponsors an informational session for eligible employees and say if you take advantage of this special retirement program that we've written into the contract, you'll have health insurance to age 65? Your position is they should not have relied upon that representation? Two responses to that. The extrinsic evidence, as I read it, did not misrepresent the nature of the plans to the retirees or promise that they would be vested or promise that they would survive expiration. You don't use vested language. You say if they said if you retire under the special program, you'll have insurance until age 65. That's what I understood they said. They didn't say you'll be vested to 65. I mean, that's legalese. Right, but I'm just making the point that the extrinsic evidence doesn't show what plaintiffs need to show in this case, which is that Honeywell promised that the benefits would continue past CBA expiration if plaintiffs' own union doesn't agree to renew them in the active CBA. I think what your question is getting to is did plaintiffs have some relief, even if they're wrong in the plain text of the contract? Plaintiffs below do have a breach of fiduciary duty claim pending below that they can pursue. We very much don't think they have a meritorious breach of fiduciary duty claim. We have filed a motion to dismiss on that. But if they think there was some misrepresentation in what Honeywell said, which I very much do not think there was, they can pursue that in the context of a breach of fiduciary duty claim. It does not vest benefits in a CBA that doesn't include any vesting language and includes expressed durational clauses and includes a number of textual indicators that this Court has held time and time again do not vest benefits. I think the most instructive case for this Court to consider, Your Honor, and then I'll reserve the balance of my time, is the Cooper case from the Sixth Circuit that was in the exact same procedural posture of this case on appeal from a preliminary injunction, and there the Court addressed a provision promising benefits, quote, until age 65, and the Sixth Circuit held that such language did not vest health care benefits beyond the expiration of the contract. And in Cooper, there was a special retirement program-like program in that case. They don't call it the special retirement program. They call it something else. It was the exact same opportunity for individuals to retire to be eligible for health care benefits, and the Court there held that it did not suggest vesting. You talk about Reese, and it's a per curiam opinion, which contains an assertion that can be read as saying that a general duration clause unless specifically countermanded control. In your view, is there any indication that Reese intended to change the rule of Tackett? No. Reese and Tackett are entirely consistent. If the analysis in Tackett to the extent it is more specific on when a general duration clause is controlled under ordinary contract principles, would Trump be the way to read Reese? I don't view any daylight between the two decisions. You're making the argument that's been made by the Employer Council. For the almost 30 years I've been on the bench and hearing numerous of these difficult cases, your argument hasn't changed. The question is whether the Supreme Court has changed the landscape. I don't think the Supreme Court has changed the landscape in this circuit. I think this circuit has long applied ordinary principles of contract law. The Sixth Circuit was addressed to case law from the Sixth Circuit that did not. We've also painfully reviewed the extrinsic evidence which typically the union advocates always have about the bargaining history. Your Honor, this Court said as recently as Maytag that when talking about the fact that we have in this case that the SPD has a reservation of rights provision, it said, when the applicable SPD, devoid of vesting language, explicitly reserves the right to modify the retiring medical plan at any time, beneficiaries have not met the burden of proving vesting language and extrinsic evidence may not be considered emphasis in original. But an SPD is subject, is subservient to the contract. The SPD can't negate what's in the contract, but there's nothing here in this SPD or in the reservation of rights provision that negates the contract. That's where Judge Molloy started. Aren't there contractual hints here of something different? Absolutely not. Including the reference to 2011 in the one agreement. No, Your Honor, the point I'd make about that, that is an argument about the effective date of certain health care caps that were going to go into effect, and that's an argument that's been made and addressed in five court of appeals cases since Tackett, and it's been rejected in every single one, because that just is not a strong enough indicator of intent to vest benefits in light of all the other provisions of the contract and the general durational clause, and the fact that there are very strong and counting incentives for companies to include such caps, even if they take effect post-expiration. And with that, I'd like to reserve my balance. Mr. Adams? May it please the Court. The district court got it right when it found, in the context of a preliminary injunction, that the retirees have shown a likelihood or a plausible basis to succeed on the merits where the Honeywell promises are of a specific limited age duration to a limited group of retirees. This Court, in morale, there was reference to it,  the district court conferred fixed five-year health benefits to retirees between the ages of 50 and 54 who retired under a special plan closing agreement were promised limited vested retirement health care benefits. That's exactly what we have here. We have promises made to people between the ages of 50, I'm sorry, between 55 and 64. They were promised health care until Medicare eligibility. The contract makes that clear in several different ways, but it also makes it clear when it says the company does not provide health care benefits for retirees after age 65. These CBAs, to quote Reese, specify a duration of benefits. These CBAs, to quote Reese, provide limited health care benefits for a fixed period. This is not a lifetime case like Tackett, Reese, and all the other ones other than Cooper where the courts found that vague promises of will continue health care are sufficient to vest benefits. What do you say to the argument that the 2010 contract reduced the benefits that had been provided under the 2007 contract? I think the 2010, I don't think it did reduce benefits. It fixed it at the level that was in effect under the last year of the 2007 contract. So the benefits themselves have not been decreased. They were fixed and have remained in effect since 2010. There's been no increase. But beyond that, what we're talking about is not whether there's tweaks or changes in benefits. It's the durational issue. And there's two That's how you figure the duration. There is no ambiguity. The suggestion that age 65 is eligibility really makes no sense. That's like saying the promise in morale between ages 50 and 54, you get it for fixed five years. Well, the five years, that's just eligibility. It's not eligibility. It defines the duration. And that makes it far different than the problems that the Sixth Circuit had when it was a pro-retiree vesting presumption. It was for 30 years in the Sixth Circuit. They would find lifetime health care with very general language. In Tackett, the Supreme Court said, Sixth Circuit, you had a thumb on the scale for the retirees. Sixth Circuit, you had presumptions in favor of retirees that had nothing to do with the Sixth Circuit today. Would you agree that if we had a thumb on the scale for retirees, we would have a thumb on the scale for retirees? I don't think so. Honeywell was the employer in both, but I have no... They probably were different collective bargaining agreements, and I certainly have never laid them side-by-side. I was the attorney. Would that or anything else distinguish Cooper? There's ways to distinguish Cooper, Your Honor, but ultimately, Cooper and this case involve promises of health care to age 65. We can dance on the expression angels dance. How do you extract out your answer of no? Why not? Because here, for example, unlike Cooper, prior to 2007 in Honeywell's Minnesota plant, the contract never made reference to retiree health care. The promise was first put in the contract in 2007. And before that, the promise was there, never in the contract, but for 30 years they were given health care until age 65, regardless of the duration of the contract, regardless of when the contract expired. That practice is far different than what existed in Honeywell, Minnesota. Cooper is essentially a textual analysis of the present agreement, isn't it? Yes, Your Honor, but Tackett... Because of this, we would have to have a trial as to extrinsic evidence? Or are you saying something different? Or at least discovery, Your Honor, and proceed with the case beyond the textual. That wouldn't warrant a preliminary injunction. It may not, Your Honor. Ultimately... That's why I said, if we agree with Cooper on this record, does that mean we need to reverse the preliminary injunction? I don't think so, Your Honor, because the standard on a preliminary injunction is not are you going to win, it's have you shown a likelihood. And I still think that the Sixth Circuit there found no likelihood. And I think here you could still say, based upon this record and the extrinsic evidence, if you consider the extrinsic evidence, if you consider the practices, that you can uphold the preliminary injunction. But I'll address Cooper with you, Judge. Let me just address Cooper head-on. Cooper is wrong. Now, I know I'm speaking of another circuit. But the Sixth Circuit, I mentioned, has been pro-retiree for 30 years. The Supreme Court three times now has reversed them within the last few years. Twice in February of this year, they reversed them summarily, as you noted in Reese. Summarily reversed them. In lifetime cases where they found vesting based upon silent contracts. And the Supreme Court said, you cannot do that. Unfortunately, Cooper came down two weeks after those two decisions. And I think the Sixth Circuit over-corrected itself. It applied that to say that you need explicit language in the duration clause in order to have a vested benefit. I refer to it as the Cooper-Uber-Allis duration clause. Duration clause, duration clause, duration clause, above all else. That's not what Tackett says. I think Judge Loken made reference to it. Tackett says the duration clause does not say everything about vesting. Honeywell wants the duration clauses, which are found in every contract negotiated in the United States of America, because they're always going to have a three- or four-year contract. And they want to elevate this to the end of all things. The problem in the Sixth Circuit before Tackett was the Sixth Circuit never looked at duration clauses, never looked at anything other than whether it was a promise and whether it was connected at all to retirees. That is gone. We have lost that argument. Supreme Court found no vesting presumptions. But the Sixth Circuit, I think, in Cooper, over-corrected, especially applying it to an age 65 case. Because if you read Cooper closely, what they said is, here's how you have to read the contract. You get health care until age 65, and the Sixth Circuit added this, or the contract expires, whichever occurs first. They added that. That's what they said, the contract should be read. They italicized that. They added that to the contract. It does not say that. Any person reading that contract, any Honeywell manager, Honeywell negotiator, any retiree, any person contemplating retirement under the Special Retirement Program, would read a promise of health care to 65 as just that. Who is going to read it as unless the contract expires, whichever occurs first? In not any one of their handouts that they gave out, did they tell retirees, your health care benefits may end at the expiration of the contract? In the SBD that they invoke so much, it doesn't mention the word retiree. It doesn't mention loss of benefits. It doesn't say you could lose benefits upon expiration of the contract. The only reference to loss of benefits in the SBD is upon your retirement, you lose health care. So the extrinsic evidence supports us, and the Eighth Circuit has long recognized, I think in Morrell it says, it is unwise to interpret contracts without the bargaining history or context or understanding. It is very dangerous to read language in the abstract. And that's what the Sixth Circuit did in Cooper, and they reached a result, I think again, overcorrecting from the two reversals summarily by the Supreme Court. So I would suggest that this Court not import the mess that's in the Sixth Circuit. Because in one of the decisions post-Tackett, one of the judges says it's a mess. They're all over the place. And so now the Sixth Circuit's gone anti-retiree. And not just the thumb on the scale of employers, it has placed a hand, a fist on the scale of employers. And Tackett teaches the party's intentions control. No magic words, no talismanic phrases. The goal of the courts are determined by the party's intent. And here, unlike a lifetime case, where you often have vague promises or will-continue promises, we have a promise that's age-specific. And that's why it fits, I think, clearly within Morrell. But it's not just Morrell. We cited other circuits, including the case Keffer v. H.K. Porter from 1989. That was one of the first cases I had where the promise there was health care until Medicare eligibility. And the court found that's a promise of a specific duration. That's enforceable. We're not seeking to burden Honeywell with a promise of lifetime benefits for 30, 40, 50 years. The people in this class will eventually be done with it by 2021, 2022. And the people will get smaller and smaller until there's no one left. Because the last reference to the special retirement program, if you want to retire, you've got to give us four months advance notice. If you don't retire, if you retire after that date, you will not get health care. That's why over 200 people retired. And Honeywell did this because it was to their benefit. Honeywell was able to reduce the senior workforce and allow less senior, lower paid employees. And the more senior people were able to say, okay, I will take a reduced pension, significantly reduced pension, because if I don't, I will never get a chance for health care to 65. Why isn't there an adequate remedy at law here? You win the case and then they get paid the benefit. We'll get into trial in a hurry. I don't want them to pose every class member for five years. That's what they do. That's one of the frustrations to the judiciary and I suspect the litigants. But the loss of medical care, the inability to get health care, especially pre-65, the premium rates, we put in some declarations that talked about the premium rates to be over $2,000 for a family coverage and their pensions are maybe a little over $2,000. The people will in essence go without health care, which the courts have uniformly said that is irreparable harm, loss of health care, loss of Obamacare. I don't know if it's still called that, but that's what they called it back in a couple of years. But that doesn't always provide health care coverage. Unfortunately, it doesn't do what people thought it would do. And they're still going to be paying large sums of money. So the lack of health care I think has been uniformly held by the courts, not just in retiree health care context, but in other health care cases to be irreparable harm. And here I want to go back to it. These people retire not just based on the contract language, but what they were told by Honeywell, bargainers and HR people. They were told if you want health care now, you've got to retire before this date under the special retirement program to be guaranteed health care. If you retire after, you're gone. That's why Vicki Hanson, that's why these people gave up their jobs, took reduced pensions for health care to 65, and Honeywell relying on TACIT, which has nothing to do with the 8th Circuit jurisprudence, has pulled their rug out from under these people. It may have something to do with the 6th Circuit, which is where I've had all the other cases with Honeywell. Here, they pull the rug out from the people and say, well, we're going to engage in a hyper-technical abstract interpretation, and look at this language and say, it's not vested. The district court heard the evidence and found that there's a reasonable basis for success. And I believe that there's a strong basis for success, because an age-specific promise has been held in the 4th Circuit that does not apply our yard-man presumption. It's held by the 9th Circuit that does not apply the yard-man presumption to be a durational promise. I don't know how else you can be clearer than saying a promise until 65. That's a clear promise, a reasonable reader of the record, which is what you have to apply. Common sense is what the district court said. What would a person reading this believe when they're given Q&As by Honeywell that say, well, how long do I have health care? Until you turn 65. When does it end? When you turn 65. That's why these people went out, and that's why I believe we're entitled to the preliminary injunction, and hopefully, ultimately, on the merits. But we're not asking you to rule on the merits. We're not asking you to say, as a matter of law, we win. All we're saying is, based upon this record and the preliminary injunction, that we've met the standards, and that the district court did not abuse their discretion and properly issued an injunction based upon limited vested benefits, as in morale. Beyond the Q&A that you quote in your brief, is there anywhere in the record that there's a fact sheet or any other written information that was given to the potential retirees explaining what the effects were, whether it's reduced, you know, how much the pension would be reduced and what they would get in return? Is there anything like that? Anyplace in the record? I don't think in the record about a reduced pension. We have declarations that say they take reduced pensions, and I don't think there's any dispute that if you retire under age 65, there's a formula that you end up taking like 10%, 20% less. But the Q&As mainly talk about the health care benefits, not the pension benefits specifically. But we have declarations from two retirees and the Q&As that lay some of this out. Any more questions? Thank you very much. Thank you. Mr. Allen, verbal? Thank you, Your Honor. A couple of points. First of all, counsel made the same mistake he makes in his brief and says that, well, the contract says until 65. It doesn't say that. It says pre-65 only, which is clearly eligibility language. And I think that also helps with Cooper because Your Honor asked, well, if you agree with Cooper, do you need to reverse? Absolutely. If this court agrees with Cooper, it does need to reverse. In fact, Cooper was in some ways a harder case than this one because the language in Cooper did say until 65. It used the word until, which one could argue had more of a durational suggestion to it. And the Sixth Circuit still held benefits are not vested. It's an eligibility provision, not a durational provision. What do we make of the Q&A that uses the words until 65? Your Honor, again, the Q&A is accurately describing the terms of the plan that are then in effect, which is what Honeywell should be doing. It should be describing. But you're the one who said until 65 has some meaning. And that's what the Q&A says. You're eligible for health care until 65. I'm saying it arguably could have meaning. Cooper held that it didn't. I don't think it does. I'm saying it's maybe a harder case. The text of this CBA doesn't use that language. In fact, the FAQ that Mr. Adams cites in his brief says at JA 125, there's a question that says, if I retire after April 30, 2007, what health care benefits will I have available? And the answer is, if you retire from Honeywell after April 30, 2007, you will be eligible to be covered by the health care plan design in effect under the current contract and any future negotiated changes to health care benefits. That means your contributions and prescription drug co-pays will follow the 2007 contract until April 30, 2010. Your retiree health care benefits will be a mandatory subject of bargaining in all future negotiations. So I think they're clearly signaling to the retirees that, look, the contract is time-limited, so for the SPDs, these benefits are not vested. Thank you, Your Honors. Thank you, Counsel.